UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Case No. 21-CR-223-3 |
| KYLE GEORGE DAVIES, ) | |
| Defendant. ) | |
| _____ ) | |

## FACTUAL BASIS FOR PLEA OF GUILT

The United States of America, by and through the United States Department of Justice, Criminal Division, Public Integrity Section, and the defendant, Kyle George Davies ("DAVIES"), personally and through his undersigned counsel, hereby stipulate to the following statement of facts. The defendant hereby affirms that if this matter were to proceed to trial, the United States could prove the following facts beyond a reasonable doubt:

### I. Background

1. Between at least January 2016 through at least 2018, DAVIES, a resident of Austin, Texas, and co-defendants Matthew Nelson Tunstall and Robert Reyes, Jr. conspired to establish and operate several fraudulent political action committees ("PACs") during the 2016 federal election cycle within the Western District of Texas. Tunstall was DAVIES' cousin, and Reyes was Tunstall's business associate. Reyes also operated Modern Media Group LLC ("Modern Media").

2. DAVIES and his co-conspirators created and used Liberty Action Group Political Action Committee and Progressive Priorities Political Action Committee to obtain approximately $3.5 million from unwitting donors based on false and misleading representations and laundered the proceeds of that scheme.

3.      DAVIES and his co-conspirators used other associates to effectuate their fraud scheme. Individual 1 was a friend of DAVIES. Individual 2 was DAVIES' girlfriend. Individual 3 was an associate of DAVIES. Individual 4 was a relative of Reyes. Individual 5 was a certified public accountant who was hired by Liberty Action Group Political Action Committee ("Liberty Action Group") and Progressive Priorities Political Action Committee ("Progressive Priorities") to conduct certain bookkeeping activities on behalf of both entities. Individual 5's responsibilities included receiving monthly reports from Reyes regarding Liberty Action Group's and Progressive Priorities' fundraising activities; separating the financial transactions outlined in those reports by receipts or disbursements; entering those activities into a format compliant with the reporting systems of the Federal Election Commission ("FEC"); and obtaining Reyes' final approval before filing the monthly reports for Liberty Action Group and Progressive Priorities with the FEC.

4.      Company A is a communications company that provided a platform for Liberty Action Group and Progressive Priorities to disseminate telephone calls that used a computerized autodialer to deliver a pre-recorded message, often referred to as "robocalls."

5.      Candidate 1 was the Political Party A candidate for the Office of the President of the United States in the 2016 federal election cycle.

6.      Candidate 2 was the Political Party B candidate for the Office of the President of the United States in the 2016 federal election cycle.

7.      Liberty Action Group was a political action committee that claimed to raise political contributions to support the election of Candidate 1 in 2016 and to support the Political Party A agenda after Candidate 1's election. In furtherance of the conspiracy, Tunstall, Reyes, and DAVIES opened or caused to be opened a bank account for Liberty Action Group at Financial

2

Institution A in the Western District of Texas.

8.  Progressive Priorities was a political action committee that claimed to raise political contributions to support the election of Candidate 2 in 2016. In furtherance of the conspiracy, Tunstall, Reyes, and DAVIES opened or caused to be opened a bank account for Progressive Priorities at Financial Institution B in the Western District of Texas.

9.  American Priority ("American Priority") Political Action Committee was a political action committee that claimed to raise political contributions to support Political Party A. In and around 2016, Reyes started American Priority under Tunstall's guidance.

## II.   The Fraud Scheme

10. In and around 2016, Tunstall formed Liberty Action Group and Progressive Priorities, and he was the mastermind behind the scheme. At Tunstall's invitation, and based upon Tunstall's representations of professional advancement and financial opportunities, DAVIES moved to Austin and joined the scheme. DAVIES trusted Tunstall and relied upon his representations. In Austin, DAVIES learned that Tunstall was working with Reyes to lead and manage the PACs' activities.

11. During his participation with Liberty Action Group and Progressive Priorities,, DAVIES' responsibilities included, but were not limited to, depositing checks received from PAC donors and recording the donors' information; placing telephone calls to solicit "contributions" to the PACs and training others to place calls; reviewing solicitation materials created by Tunstall and Reyes and drafting new and original content for potential solicitations; and recruiting additional participants to the scheme. Through his involvement with the Liberty Action Group and Progressive Priorities, DAVIES learned that that the PAC leaders, Tunstall and REYES,

3

among other things, managed or supervised Liberty Action Group and Progressive Priorities employees, including DAVIES; were responsible for the creation of solicitation materials, including the scripts used by the call centers; selected and hired vendors like Company A; oversaw the collection of data to be provided to the FEC as well as the filing of FEC reports; and determined how and when Liberty Action Group's and Progressive Priorities' funds were distributed.

12. Liberty Action Group and Progressive Priorities obtained money based on false and misleading representations about their purported efforts, activities, and spending. Specifically, through written fundraising solicitations, telephone call solicitations, and other means approved by Tunstall and Reyes, Liberty Action Group and Progressive Priorities falsely represented to donors that their donated funds would be used in support of candidates for the Office of the President of the United States, including through direct contributions to authorized campaign committees.

13. Tunstall, Reyes, and DAVIES, acting at the direction of Tunstall and Reyes, instead used the funds they acquired through the scheme to pay for additional fraudulent solicitations for money, to enrich themselves directly, and to support their independent, unrelated business ventures. Of the approximately $3.5 million raised by Liberty Action Group and Progressive Priorities, only approximately $19 were distributed to any candidate's authorized campaign committee or to any political cause, while the PACs transferred approximately $1.5 million in political contributions to Tunstall's personal and business bank accounts; approximately $714,000 in political contributions to accounts held by Reyes; and approximately $84,385 in political contributions to accounts held by DAVIES. These transfers included, but were not limited to, the below:

4

- Approximately $57,000 from Liberty Action Group, Financial Institution A Account XXXX156, to Modern Media on or about, December 23, 2017;

- Approximately $50,000 from Liberty Action Group, Financial Institution A Account XXXX156, to Tunstall on or about December 27, 2016; and

- Approximately $2,000 from Liberty Action Group, Financial Institution A Account XXXX156, to DAVIES on or about March 3, 2017.

14. Tunstall, Reyes, and DAVIES used the names of others—at times without their knowledge or permission—and forged names on filings to the FEC and on other documents relating to the PACs to conceal and disguise their role in the fraudulent scheme.

A. Fraud through Liberty Action Group Political Action Committee

　　i. *Filings with the FEC*

15. In and around January 2016, DAVIES, at Tunstall's request, recruited Individual 1 to be the nominal head of Liberty Action Group. Although Individual 1 was identified as the Liberty Action Group Director in filings with the FEC, Individual 1 had no decision-making authority with respect to the PAC; rather, Tunstall and Reyes remained responsible for all decisions and retained supervisory control of the PAC's activities.

16. Between on or about January 13, 2016, and on or about April 23, 2017, Tunstall and Reyes caused Liberty Action Group to file reports with the FEC, including by supervising or managing Individual 5 in the preparation and submission of those reports.

　　ii. *Misrepresentations to Potential "Contributors"*

17. Tunstall, Reyes, and DAVIES caused Liberty Action Group to use Company A's platform to solicit money from the public through false and misleading representations that, among other things, asked potential donors to make an emergency investment in the campaign to elect Candidate 1. Some solicitations claimed that the money would be used to directly help Candidate 1 by sending facsimile communications to members of Congress, when, in fact, no such communications were sent, while others falsely claimed that Candidate 1 had personally asked Liberty Action Group to call potential donors.

18. Tunstall, Reyes, and DAVIES created and provided scripts to be used by live call center operators when individuals who received Liberty Action Group's robocalls agreed to make a contribution, or when individuals called into the telephone number provided in radio advertisements disseminated by Liberty Action Group. These scripts also used false and misleading representations.

19. DAVIES, under the direction of Tunstall and Reyes, placed telephone calls to solicit money through false and misleading representations, including that the money was "for the [Candidate 1] administration."

**B. Fraud through Progressive Priorities Political Action Committee**

   i. *Filings with the FEC*

20. In and around May 2016, DAVIES, at Tunstall's direction, recruited Individual 2 to be the nominal head of Progressive Priorities. Although Individual 2 was to be identified as the PAC Director in filings with the FEC, Individual 2 had no decision-making authority with respect to Progressive Priorities; rather, Tunstall and Reyes were responsible for all decisions and retained supervisory control of the PAC's activities.

21. In and around December 2016, DAVIES, at Tunstall's request, recruited Individual 3 to be the nominal head of Progressive Priorities. Individual 3 was later identified as the PAC Director in filings with the FEC, without Individual 3's knowledge or actual participation as the role; rather, Tunstall and Reyes continued to be responsible for all decisions and retained supervisory control of the PAC's activities.

22. Between on or about May 11, 2016, and on or about August 15, 2019, Tunstall and Reyes caused Progressive Priorities to file reports with the FEC, including by supervising or managing Individual 5 in the preparation and submission of those reports.

### ii. *Misrepresentations to Potential "Contributors"*

23. Tunstall, Reyes, and DAVIES caused Progressive Priorities to use Company A's platform to solicit money from the public through false and misleading representations that, among other things, asked potential donors to make an emergency investment in the campaign to elect Candidate 2.

24. Tunstall, Reyes, and DAVIES provided scripts to be used by live call center operators when individuals who received Progressive Priorities robocalls agreed to make a contribution. These scripts also used false and misleading representations.

25. Tunstall, Reyes, and DAVIES also caused Progressive Priorities to solicit money online through its website, which included a description of Progressive Priorities as "a federal political committee that makes contributions to federal and state candidates and committees." Tunstall and Reyes created the website.

### iii. *Other Acts involving Progressive Priorities Political Action Committee*

26. On or about November 30, 2016, DAVIES sent an email to Individual 4, with the subject line "PPP App." Attached to the email was a document entitled "Merchant Application and Agreement," identifying Individual 3 as "PAC Director" for Progressive Priorities and purporting to bear Individual 3's signature. At the time DAVIES knew that Individual 3 had not, in fact, signed the document.

27. On or about December 6, 2016, DAVIES sent an email, with the subject, "Signer docs for bank," to his then-girlfriend with documents relating to Progressive Priorities, which DAVIES described as "all the forms she needs." Among the attachments was a document entitled "Unanimous Decision of Directors," with a signature line for "Individual 3, Director," which DAVIES stated that "she needs to sign . . . after printing."

28. On or about December 12, 2016, DAVIES scanned a version of the Unanimous Decision of Directors that purported to bear Individual 3's signature to his email account and, a few minutes later, sent a copy to Reyes and Individual 4, with the message, "here you go." At the time DAVIES knew that Individual 3 had not, in fact, signed the document.

DATED: 3/25/22

FOR THE DEFENDANT:

Kyle George Davies
Defendant

Dan Dworin
Attorney for the Defendant

DATED: 3/25/2022

FOR THE UNITED STATES:

Corey R. Amundson
Chief, Public Integrity Section

By: Rebecca M. Schuman
Michael N. Lang
Trial Attorneys
Public Integrity Section, Criminal Division
U.S. Department of Justice

**CERTIFICATE OF SERVICE**

      I hereby certify that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney(s) of record for the defendant(s).

                                                */s/ Rebecca M. Schuman*
                                               Rebecca M. Schuman

Dated: March 25, 2022